IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

**Marion C. Vereen**, as the
Administrator for
the Estate of Tristan Vereen,                                 Civil Action No:


                    Plaintiff,                                 **(JURY TRIAL REQUESTED)**

vs.

**Whitney Blake Benton**,
in his individual capacity,


                    Defendant.

---

## COMPLAINT FOR DAMAGES

COMES NOW Plaintiff, Marion C. Vereen, as the Administrator for the Estate of Tristan Vereen, (hereinafter "Plaintiff"), by and through the undersigned attorneys, and hereby files this Complaint against State Trooper Whitney Blake Benton, in his individual capacity (hereinafter "Defendant Benton"), shows the court the following:

## **INTRODUCTION**

"Turn over, or I'll do it again."  The words Defendant Benton said to Tristan Vereen after shooting him in the chest and ultimately killing him.



Tristan Vereen

## JURISDICTION AND VENUE

### 1.

This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343 over Plaintiff's claims under the U.S. Constitution, which are brought directly under 42 U.S.C. § 1983. The Court has supplemental jurisdiction under 28 U.S.C. § 1367 for the Plaintiff's state law claims because they arise out of a common nucleus of operative fact of Plaintiff's federal claims. The Plaintiff brings this claim in this Division because the incident that gave rise to this action occurred in Horry County, South Carolina.  Venue is proper in this court pursuant to 28 U.S.C. 1391(b), as the alleged actions occurred in Horry County.

## PARTIES

### 2.

Plaintiff, Marion C. Vereen, is a citizen and resident of Horry County, South Carolina.

### 3.

Defendant Benton is employed as a Master Trooper with the South Carolina Highway Patrol and, at all times mentioned herein, was acting in the course and scope of his employment under color of law.  Defendant Benton is sued in his individual capacity.

## STATEMENT OF FACTS

4.

On September 11, 2021, at approximately 3:47 p.m., Defendant Benton illegally initiated a traffic stop on Mr. Vereen due to a cracked windshield.

5.

After Defendant Benton activated his blue lights, Mr. Vereen briefly pulled over to the right side of the road before maneuvering in the opposite direction and driving away.

6.

Mr. Vereen turned into a vacant lot adjacent to 698 McNeil Chapel Road, drove through the front yard, and circled the residence into the backyard with Defendant Benton following closely behind him.

7.

Once in the backyard of 698 McNeil Chapel Road, Mr. Vereen exited his vehicle and ran.

8.

Defendant Benton exited his vehicle and pursued Mr. Vereen telling him to stop and to get on the ground.

9.

During his pursuit of Mr. Vereen, Defendant Benton tasered Mr. Vereen who, as a result, fell to the ground next to Defendant Benton's front passenger door.

10.

Mr. Vereen and Defendant Benton began to scuffle, during which time, Mr. Vereen exclaimed, "He's trying to kill me."

11.

A fight ensued, and Defendant Benton discharged his taser on Mr. Vereen several times before throwing the taser to the ground.

12.

At approximately 3:53 p.m., Defendant Benton fired a single gunshot, striking Mr. Vereen in his chest.

13.

After shooting Mr. Vereen in the chest, Defendant Benton tells Mr. Vereen to show his hands.

14.

Mr. Vereen exclaimed "Hey, you killed me!" and "He shot me!"

15.

Defendant Benton tells Mr. Vereen "Turn over, or I'll do it again."

16.

Mr. Vereen then got up to walk away and collapsed behind a dark colored SUV in the backyard of the residence.

17.

Defendant Benton holstered his pistol and walked back to his vehicle.

18.

Trooper Edwards arrived on the scene and handcuffed Mr. Vereen, who was lying on the ground, bleeding from his torso, unconscious and not talking.

19.

Mr. Vereen was pronounced dead at approximately 4:56 p.m.

20.

Vereen's autopsy report noted the cause of death was a single gunshot wound to the chest, and the manner of death was homicide.

21.

SLED's investigation determined the projectile recovered from Vereen's back was fired by Trooper Benton's pistol.

22.

Axon Enterprises, Inc., Senior Investigations Engineer, Bryan Chiles completed a TASER CEW Analysis Report for Defendant Benton's TASER X26E.

The report indicated the TASER recorded two (2) trigger events at 3:53 EDT for five (5) seconds each.

23.

The activation log indicated the TASER then experienced multiple "clock resets" and data corruption after the two (2) trigger events.

24.

Due to the "clock resets" and data corruption, Axon could not determine if the TASER was activated more than twice.

25.

Upon inspection, no damage was found that would be expected to impede the functionality of the TASER.

26.

Axon was unable to determine why the "clock resets" and data corruption occurred.

*unlawful traffic stop*

27.

As stated above, Defendant Benton initiated a traffic stop on Mr. Vereen due to a cracked windshield.

28.

The state of South Carolina has no law restricting a driver in the state of South Carolina from driving with a cracked windshield.  Specifically, per South Carolina Code of Laws Section 56-5-5000, a driver cannot drive in the state of South Carolina with an obstructed view.

29.

Per Section 56-5-5000, a cracked windshield is not considered an "obstructed view" for purposes of the statute.

1. Section 56-5-5000 provides:

**Windows obstructed; windshield wipers.**

No person shall drive any motor vehicle with any sign, poster or other nontransparent material upon the front windshield, sidewings or side or rear windows of such vehicle which obstructs the driver's clear view of the highway or any intersecting highway. The windshield on every motor vehicle shall be equipped with a device for cleaning rain, snow or other moisture from the windshield, which shall be so constructed as to be controlled or operated by the driver of the vehicle. Every windshield wiper upon a motor vehicle shall be maintained in good working order.



*Accurate depiction of the exterior view of the windshield of the vehicle Tristan Vereen was driving on the day in question.*



*Accurate depiction of the interior view of the windshield of the vehicle Tristan Vereen was driving on the day in question.*

30.

At the time Solicitor Richardson declared that the shooting death of Mr. Vereen was justified, Solicitor Richardson knew or should have known that South Carolina Code of Laws Section 56-5-4410 does not apply to cracked windshields, as windshields are not considered to be "equipment" for purposes of the statute.

Section 56-5-4410 provides:

**Unlawful to operate unsafe or improperly equipped vehicle or to violate provisions of this article.**

> It shall be unlawful for any person to drive or move or for the owner to cause or knowingly permit to be driven or moved on any highway any vehicle or combination of vehicles which is in such an unsafe condition as to endanger any person or property or which does not contain those parts or is not at all times equipped with lights, brakes, steering and other equipment in proper condition and adjustment as required in this article or which is equipped in any manner in violation of this article or for any person to do any act forbidden or fail to perform any act required under this article.

Section 56-5-5310 provides:

**Condition of vehicle and vehicle equipment.**

> No person shall drive or move on any highway any vehicle unless the equipment thereon is in good working order and adjustment as required in this chapter and the vehicle is in such safe mechanical condition as not to endanger the driver or other occupant or any person upon the highway.

31.

At the time Solicitor Richardson declared that the shooting death of Mr. Vereen was justified, Solicitor Richardson knew or should have known that Defendant Benton had no arguable probable cause to initiate a traffic stop on Mr. Vereen for having a cracked windshield.

32.

At the time Solicitor Richardson declared that the shooting death of Mr. Vereen was justified, Solicitor Richardson knew or should have known that Defendant Benton had no reasonable suspicion to initiate a traffic stop on Mr. Vereen for having a cracked windshield.

33.

At all times relevant, Defendant Benton was acting under color of state law in his capacity as a law enforcement officer employed by SCHP.

34.

Defendant Benton has been employed as a law enforcement officer with the South Carolina Department of Public Safety since January 15, 2010.  Based on Defendant Benton's more than 11 years of experience, he either knew or should have known that a cracked windshield is not a sufficient justification for a vehicle stop in the state of South Carolina.

35.

A reasonable law enforcement officer with Defendant Benton's experience would have known that: (i) South Carolina law do not authorize traffic stop for cracked windshields on vehicles; (ii) Mr. Vereen's windshield was not "obstructed" pursuant to S.C. Code of Laws Section 56-5-5000; (iii) Mr. Vereen's windshield was not "equipment" pursuant to S.C. Code of Laws Sections 56-5-5310 and 56-5-4410; and (iv) Mr. Vereen's cracked windshield did not constitute a "mechanical condition" pursuant to 56-5-5310.

36.

Defendant Benton had no legitimate reason to pull over Mr. Vereen. Therefore, the stop – and any subsequent search and/or seizure of Mr. Vereen were illegal.

37.

Because Defendant Benton's initial attempted stop of Mr. Vereen was unjustified, Mr. Vereen's shooting death was also unjustified.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### 42 U.S.C. § 1983 – Unreasonable Seizure in Violation of the Fourth Amendment

38.

Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 37 of this Complaint.

42 U.S.C. § 1983 provides that:

Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress…

39.

Defendant Benton is a person for purposes of 42 U.S.C. § 1983.

40.

Defendant Benton, at all times relevant hereto, was acting under the color of state law in his capacity as a Master State Trooper and his acts or omissions were conducted within the scope of his official duties or employment.

41.

At the time Defendant Benton attempted to pull Mr. Vereen over, Mr. Vereen had a clearly established constitutional right under the Fourth Amendment to be secure in his person from unreasonable searches and seizures.

42.

Any reasonable law enforcement officer knew or should have known of these rights at the time Defendant Benton attempted to seize Mr. Vereen.

43.

The view of Mr. Vereen's windshield was not "obstructed" for purposes of South Carolina Code of Laws Sections 56-5-5000.

44.

Mr. Vereen's motor vehicle did not contain any sign, poster or other nontransparent material upon the front windshield, sidewings or side or rear windows of such vehicle which obstructed the driver's clear view of the highway or any intersecting highway.

45.

Defendant Benton knew or should have known that Mr. Vereen's windshield was not considered "equipment" for purposes of South Carolina Code of Laws Sections 56-5-5310 and 56-5-4410.

46.

Defendant Benton knew or should have known that a cracked windshield was not a "mechanical condition" pursuant to South Carolina Code of Laws Section 56-5-5310.

47.

Defendant Benton's actions were unreasonable in light of the facts and circumstances and violated Mr. Vereen's Fourth Amendment rights.

48.

Defendant Benton violated department policies when he engaged in a vehicle pursuit of Mr. Vereen.

49.

Based on his experience, Defendant Benton either knew or should have known South Carolina Department of Public Safety Standard 41.2.2(a-b) which states "A pursuit is justified **only** when the necessity of the apprehension of a suspect outweighs the risks created by the pursuit or the officer has reasonable grounds to believe the suspect poses a clear and immediate threat to others."

50.

Defendant Benton disregarded South Carolina Department of Public Safety Standard 41.2.2(f) which provides "Pursuits against oncoming traffic create an increased risk and severity of potential crashes or injury. Unless deadly force is

justified, officers shall not pursue against ongoing traffic on an interstate, controlled access highway, divided highway or one-way roadways."

51.

Defendant Benton's actions and use of force, as described herein, were malicious, reckless, callous, and displayed a deliberate indifference to Mr. Vereen's federally protected rights.

52.

Defendant Benton unlawfully seized Mr. Vereen, the seizure was not objectively reasonable, and the deadly force Defendant Benton used caused the death of Mr. Vereen.

53.

Defendant Benton acted willfully, maliciously, actual malice and with a reckless disregard for Mr. Vereen's protected Fourth Amendment rights.

54.

Defendant Benton's acts and omissions were the direct cause of Mr. Vereen's death.  The acts and omissions of Defendant Benton intentionally deprived Mr. Vereen of his constitutional rights and caused him other damages.

55.

Defendant Benton is not entitled to qualified immunity for his actions.

56.

As a proximate result of the unlawful conduct of Defendant Benton, Mr. Vereen was shot and killed. Furthermore, Defendant Benton's unlawful conduct caused Mr. Vereen to incur special damages, including medical expenses and other special damages, in amounts to be established at trial.

57.

Upon information and belief, Mr. Vereen suffered lost future earnings and impaired earning capacity from the injuries he sustained, in amounts to be ascertained in trial. Plaintiff is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment interest and costs as allowable by federal law. There may also be special damages for lien interests.

58.

In addition to compensatory, economic, consequential, and special damages, Plaintiff is entitled to punitive damages against Defendant Benton under 42 U.S.C. § 1983, as Defendant Benton acted maliciously, willfully, or with a reckless or wanton disregard of Mr. Vereen's constitutional rights.

## SECOND CLAIM FOR RELIEF
### S.C. Code Ann. § 15-51-10 – Survival Action

59.

Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 37 of this Complaint.

60.

Mr. Vereen, during the course of this incident, suffered injury and damages caused by the actionable conduct of Defendant Benton, which include, but are not limited to:

    a.  Pain and suffering;

    b.  Shock and terror;

    c.  Mental and emotional distress;

    d.  Medical bills;

    e.  Funeral expenses; and

    f.  Severe injury to the whole person.

61.

Mr. Vereen's causes of action for his injuries and damages survive his death and pass to his Estate, and Plaintiff seeks, general, special, and punitive damages and such further relief as this Honorable Court and the jury deem just and proper.

## THIRD CLAIM FOR RELIEF
## S.C. Code Ann. § 15-51-20 – Wrongful Death Action

### 62.

Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 37 of this Complaint.

### 63.

On September 11, 2021, Defendant Benton committed a battery when he discharged his weapon to intentionally strike Mr. Vereen in the chest. This resulted in the untimely and unlawful death of Mr. Vereen.

### 64.

The aforementioned act of discharging his weapon at Mr. Vereen was intentional and deliberate. Defendant Benton's acts were carried out in bad faith and with malicious intent to harm Mr. Vereen.

### 65.

As stated above, while Defendant Benton engaged in a scuffle with Mr. Vereen, Mr. Vereen shouted, "He's trying to kill me."

### 66.

Defendant Benton then intentionally discharged his taser on Mr. Vereen several times before deliberately firing a single gunshot, striking Mr. Vereen in his chest.

67.

After realizing he had been shot, Mr. Vereen exclaimed, "Hey, you killed me!" and "He shot me!"

68.

In response, Defendant Benton callously told Mr. Vereen "Turn over, or I'll do it again."

69.

As a direct and proximate result of his acts, Mr. Vereen was killed.

70.

As a direct result of the actionable conduct of Defendant Benton, Mr. Vereen met his untimely death.

71.

The Plaintiff and the statutory beneficiaries of Mr. Vereen's estate have experienced great mental anguish, suffering, grief, sorrow, bereavement, and loss of society, advice, companionship, comfort, protection, and pecuniary benefit.

72.

Pursuant to the South Carolina Wrongful Death Act, the Plaintiff is entitled to a judgment against Defendant Benton for an award of actual damages in an amount to be determined by the trier of fact, and further entitled to punitive damages, and for any additional relief the court deems just and proper.

## FOURTH CLAIM FOR RELIEF
### False Imprisonment

### 73.

Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 37 of this Complaint.

### 74.

Defendant Benton falsely imprisoned Mr. Vereen in that Defendant Benton restrained Mr. Vereen, the restraint was intentional, and the restraint was unlawful.

### 75.

As a result of the false imprisonment, Mr. Vereen is entitled to an award for actual and compensatory damages.

## FIFTH CLAIM FOR RELIEF
### Intentional Infliction of Emotional Distress

### 76.

Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 37 of this Complaint.

### 77.

Defendant Benton intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain such distress would result from his conduct.

78.

The conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized community.

79.

Defendant Benton's actions caused the Plaintiff emotional distress.

80.

The emotional distress suffered by Mr. Vereen was so severe that no reasonable person could be expected to endure it.

81.

As a result of said intentional infliction of emotional distress, Mr. Vereen is entitled to an award for actual and compensatory damages.

**SIXTH CLAIM FOR RELIEF**
**Battery**

82.

Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 37 of this Complaint.

83.

Defendant Benton committed battery upon Mr. Vereen by inflicting upon him inappropriate and unwanted physical touching.

84.

Defendant Benton committed a battery when he discharged his weapon to intentionally strike Mr. Vereen in the chest.  This resulted in the untimely and unlawful death of Mr. Vereen.

85.

As a result of said battery, Mr. Vereen is entitled to an award for actual and compensatory damages.

## SEVENTH CLAIM FOR RELIEF
### Assault

86.

Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 37 of this Complaint.

87.

Defendant Benton committed assault against Mr. Vereen by engaging in conduct which   placed Mr. Vereen in a reasonable fear of bodily harm.

88.

As a direct and proximate result of Defendant Benton's assault, Mr. Vereen is entitled to an award for actual and compensatory damages.

## PRAYER FOR RELIEF

Plaintiff prays that this Court enter judgment for the Plaintiff against Defendant Benton and grant:

A.  Compensatory and consequential damages, including damages for emotional distress, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law;

B.  Economic losses on all claims allowed by law;

C.  Special damages in an amount to be determined at trial;

D.  Punitive damages on all claims allowed by law against Defendant Benton;

E.  Attorneys' fees and the costs associated with the action under 42 U.S.C. § 1988, including expert witness fees, on all claims allowed by law;

F.  Pre- and post-judgment interest at the lawful rate; and,

G.  Any further relief that this Court deems just and proper.

## PLAINTIFF REQUESTS A TRIAL BY JURY.

Respectfully submitted this 7th day of September 2023.

/s/Khalil Eaddy
Khalil Eaddy

The Law Offices of Harry M. Daniels, LLC

4751 Best Rd. Suite 490
College Park, GA 30037
Tel. 678.664.8529
Fax. 800.867.5248
khalil@danielsjameslaw.com
South Carolina Bar No.: 103436

/s/Harry M. Daniels
Harry M. Daniels

The Law Offices of Harry M. Daniels, LLC

4751 Best Rd. Suite 490
College Park, GA 30037
Tel. 678.664.8529
Fax. 800.867.5248
daniels@harrymdaniels.com
Georgia Bar No.: 103436
*(Pending Pro Hac Vice)*

/s/Deyaska Spencer
Deyaska Spencer

1556 Sunnyside Drive
Columbia, SC 29204
P.O. Box 6763
Columbia, SC 29260
Tel. 803.764.3639
Fax. 855.416.6758
spencer@deyaskalaw.com
South Carolina Bar No.: 102107